JAMES CURRAN MFG. CO. v. AULTMAN & TAYLOR MACHINERY CO.

(Supreme Court, Appellate Division, First Department. June 14, 1901.)

1. APPEAL—QUESTIONS CONSIDERED—TRIAL.
    Where the court, in an action on a contract, fails to instruct that there can be no recovery if the parties did not agree as to the compensation, and the submission of such an issue is not requested, the failure to submit it will not be considered on appeal.

2. SAME—TRIAL—INSTRUCTIONS—NONSUIT—SUBMISSION OF ISSUES.
    The statement by the court, on denying a motion to direct a verdict or a nonsuit, as to rulings which he will make in his charge, is not reversible error, when the instructions as given leave the real question in the cause to the jury, and there is no request for the submission of other issues.

3. CONTRACTS—SUFFICIENCY OF EVIDENCE.
    Plaintiff testified, in an action for defendant's failure to deliver a boiler in accordance with a contract, that an agreement as to price and for delivery by a certain time was made with defendant's agent, and such evidence was corroborated, though it was denied by defendant's agent. Letters afterwards written by the agent, stating that the only reason of defendant's failure to fulfill the contract was its inability to do so within the specified time, were introduced. Held sufficient to show a valid contract between the parties.
    Hatch and Laughlin, JJ., dissenting.

Appeal from trial term, New York county.
Action by the James Curran Manufacturing Company against the Aultman & Taylor Machinery Company for breach of contract of sale. From a judgment in favor of the plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.
Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William H. Blymyer, for appellant.
Frederick St. John, for respondent.

INGRAHAM, J. The action was brought to recover the damages sustained by the plaintiff in consequence of the failure of the

defendant to deliver three horizontal water-tube boilers. It appeared that on May 1, 1899, the defendant made a written proposal to furnish these boilers. This was stated to be "Specifications for Contract." It provides that, "for and in consideration of the hereinafter named amount, we propose to furnish to Jas. Curran Mfg. Co., * * * 375 H. P. Cahall horizontal sectional water-tube boilers, * * * for the sum of ——————, as per letter, one-half payable on presentation of sight draft, with shipping receipt, balance in 60 days from shipment," and signed by the defendant, per "Thayer & Company Inc. Co." Annexed to this proposal was a blank to be filled up and signed if the proposal was accepted, and accompanying this proposal was a letter from the defendant fixing the price at $5,690. Subsequently, on May 29th, the defendant submitted to the plaintiff another letter, making the net price $5,500. Upon the same day the plaintiff filled up the blank attached to the proposal, adding the words in the blank left for date of delivery, "and completed in 60 days." The acceptance of this order was to be subject "to our acceptance of May 29, 1899," and was signed by the plaintiff. Accompanying this acceptance was a letter dated the same day, addressed to the defendant, as follows:

"Your proposal for three boilers, one hundred and seventy-five horse power each, to be delivered and set, as per drawings and specifications, and subject to architect's approval, * * * is hereby accepted on the following conditions: One-third when all the material for the boilers are delivered, and one-third when the boilers are set up and the mason work for same is put in complete, and the balance thirty days after the boilers are complete and tested according to the architect's specification. These boilers to be delivered, erected, and inclosed in mason work in 60 days from date of order or acceptance. [Signed by the plaintiff.]"

The plaintiff's president testified that the letter of the defendant dated May 29th was received by him by mail; that Mr. Thayer, the defendant's agent, subsequently, and on the same day, called on the president of the plaintiff; that there was some discussion about the terms mentioned in the letter; that in their discussion it was agreed that the boilers were to be delivered and erected 60 days from the date of the acceptance, and that while Mr. Thayer was in the plaintiff's office he read the letter of May 29th, accepting the proposal upon the conditions named; that the terms of payment were discussed between the plaintiff's president and Mr. Thayer, and agreed to; that in that conversation it was stated that the building was to be completed before the 1st of October, and that the plaintiff could not get the building done unless the boilers were placed and erected within 60 days from the 29th of May. Mr. Thayer was called as a witness, and testified that he received the acceptance of the proposition and the letter accompanying it on the 29th of May; that when he read the letter of acceptance he took some exceptions to the terms of payment, as they were most extraordinary terms, "and terms that we very rarely allow, and I said that there would be some difficulty in regard to that, and that I should have to take it up with the Aultman & Taylor Machinery Company, my principal, before definitely accepting that part of the acceptance"; that, in regard to the delivery of the boilers sixty

days from date, he said that there might be some delay over that,. as that was an extraordinarily quick delivery, and the defendant had no definite information in regard to the space that the boilers. were to get in; that the witness said that there might be some· question in regard to the delivery specified by Mr. Curran, the plain- tiff's president, because "our shops were very crowded, and I wanted to get an extension of time, and he said that any extension of time· that I needed I should get from Mr. Reilly, and I thereupon called on Mr. Reilly's manager, Mr. Conroy"; that he subsequently saw Mr. Conroy on the 23d of June, and told him "it was all off, and we· could not deliver the boilers." The plaintiff's testimony was cor- roborated by a witness who was present at the time of the inter- view. He swore that not a word was said by Mr. Thayer that there· might be some delay in the delivery, or that they would have to· get an extension of time to deliver; that nothing was said by Mr. Thayer that he might have to refer the terms of payment to the· defendant; that both the terms of delivery and the terms of pay- ment contained in the plaintiff's letter of May 29th were at that· time agreed to; that these terms of payment were first proposed by Mr. Thayer, and Mr. Curran agreed to it, and that that was all the conversation there was about the terms of payment. There· was also introduced in evidence a letter from the plaintiff to the defendant, dated June 30, 1899, in which the plaintiff stated to the· defendant:

"We received your final proposition, dated May 29, 1899, to furnish and erect three water-tube Cahall boilers. * * * These boilers were to be· delivered and erected ready for steam sixty days from date of order. We accepted your proposal of May 29, 1899, and you accepted our order of' same date, and on or about June 23d you called on the writer, and made· the statement that you could not or would not deliver the boilers as per· your proposal, unless we extended the time for delivery and erection thirty days, which extension we could not allow, as the building had to be finished' and occupied by September 1st. All this places my company in a very bad condition before my customers, and we want your company to state· your end of the matter in writing at the earliest possible time, so that I can place it before Mr. Butler and the architect."

In reply to that letter, on the 6th of July, 1899, the defendant's. agent wrote a letter to the plaintiff as follows:

"Your favor of the 30th ult. duly at hand, and noted. In regard to the· order which you gave us for boilers to go in the building at 70th street and Boulevard, would state that upon receiving this order from you we· waited a few days to secure the information in regard to the conditions. where these boilers were to be installed, and immediately on receipt of same sent all the papers pertaining to this order to our principals, the Aultman & Taylor Machinery Company. A few days thereafter we received' word from them to the effect that owing to this order calling for a special' boiler, and having special requirements for material to make up these boil-- ers, it would be impossible to complete them within the period specified by you. * * * Immediately upon receipt of this communication from them we notified you of the fact of our not being able to complete this work within the time specified, and asked if it were possible to secure an· extension, when you told us you could not give us any such extension, and· referred us to the general contractor on this job, Mr. T. J. Reilly. Upon communicating with him, we learned that the boilers had to be in opera- tion by September 1st. at the very latest. We then communicated with our shops to that effect, and they replied that it was beyond their power·

to complete the work within that time.  *  *  *  Upon receipt of information from the Aultman & Taylor Company that they could not meet this completion of the contract by September 1st, we notified T. J. Reilly, and had considered your order canceled.  We beg to state that we are extremely sorry that we are unable to build these boilers for you, and assure you that, had we been able to meet the delivery in any possible way, we would have been glad to do so; our inability being entirely due to the overcrowded condition of the iron and steel market, and the inability to secure material quickly."

At the end of all the testimony the defendant moved to dismiss the complaint.  That motion was denied, the court stating:

"The specifications were modified by the written letters on both sides, which finally crystallized the contract as to the terms of payment.  I cannot let you go to the jury on that issue at all.  The letters themselves show that you could not deliver the goods on time, and the only question is whether the time of delivery was of the essence of the contract."

To that the defendant excepted, and then asked to go to the jury, to which the court replied, "Certainly."  From the record it further appears that, after counsel for the defendant summed up, the court made this statement: "Counsel is not allowed to sum up on the point as to whether there was a contract or not.  I shall charge the jury that there was a contract.  That is a false issue,"—to which counsel for the defendant excepted.  Counsel for the plaintiff then summed up, and in the course of the charge to the jury the court stated that two parties may contract, and make the time the essence of the contract.  "If that is understood by both parties; if that is the essence of the contract,—that is, that a party must have a thing within a certain time,—and that contract is clearly within the minds of both parties, if it is not done within that time it is a breach of the contract.  *  *  *  The only dispute in the case, and which I leave you, is whether or not they did agree to do that within sixty days, and whether it was brought home to Mr. Thayer, who was the selling agent of the defendant company, that the essential part of the contract was the delivery within sixty days.  *  *  *  The only thing left, as the court sees it, is whether or not their minds did meet on the question of the sixty days.  There is no dispute that other boilers were bought, and that the price was $6,300, which was $800 more than the contract price; and, if you resolve the one question of fact which I leave to you in favor of the plaintiff, the burden being upon the plaintiff to prove his case by a fair preponderance of evidence, you will find a verdict in his favor for $800.  If, on the contrary, you find that the minds of these contracting parties did not meet on the sixty-days limit, that time was not the essence of the contract, and therefore there was no agreement upon that subject, you will find a verdict for the defendant."  Counsel for the defendant then excepted to the charge of the court that a contract was made and the minds of the parties met with regard to the agreement of payment and with regard to the time of delivery.  To that the court said: "I did not charge that their minds met as to the time of delivery.  That is the question I leave to the jury."  Counsel for the defendant: "With regard to the fact that the Aultman & Taylor Company agreed to deliver?"  The court: "I will give you an exception.  I leave the question to

the jury whether their minds did meet upon the question of delivery within sixty days, and that was the essence of the contract. That is the question I am leaving to the jury." Counsel for the defendant: "I will withdraw my exception with regard to the question as to the delivery." There was no request to submit any other question to the jury, and the jury found a verdict for the plaintiff.

There was undoubtedly a modification by the plaintiff of the original proposition made by the defendant as to the time of payment, and a limit of the time within which the boilers were to be delivered. By the original proposition made by the defendant, there was no time fixed within which the boilers were to be delivered, and the time of payment was, one-half payable on presentation of sight draft, with shipping receipt, and the balance in 60 days from shipment. The plaintiff accepted the proposal upon condition that the payments should be one-third when all the materials for the boilers were delivered, and one-third when the boilers were set up and the mason work for the same put in complete, and the balance 30 days after the boilers were complete and tested according to the architect's specifications; and there was also a modification as to the time of the delivery, which, instead of being unlimited, was limited to 60 days from the date of the contract. According to the plaintiff's testimony, these conditions were unconditionally accepted by the agent of the defendant, and, if that was true, there was then a completed contract. The testimony of the agent of the defendant, however, denied this acceptance of the conditions imposed by the plaintiff, both as to the time of payment and the time for the completion of the boilers. When, however, the defendant had refused to carry out its agreement, and was asked to explain its position, the defendant's agent, by the letter of July 6th, distinctly placed the refusal to deliver the boilers upon its inability to deliver them within the time specified. No question was then made as to the time of payment. The order was treated as an existing order accepted by the defendant, but as having been subsequently canceled because of the inability of the defendant to deliver the boilers in time. That letter is entirely inconsistent with the claim of the defendant that no contract was ever made, or that any question had been raised as to the time of payment. The agent for the defendant there stated: "Had we been able to meet the delivery in any possible way, we would have been glad to do so; our inability being entirely due to the overcrowded condition of the iron and steel market, and the inability to secure material quickly." In the face of this testimony, and the statement of the defendant's agent that the only objection that the defendant made to completing the order was that the time within which the boilers had to be delivered was too short, and that he had endeavored to procure from the contractor an extension of time to deliver the boilers, and that it was upon a failure to obtain such an extension that they refused to comply with the contract, it would seem that a finding of the jury that any objection was taken to the terms of payment contained in plaintiff's letter of May 29th would have been clearly against the weight of evidence. The correspondence and the testimony show

conclusively that the only question that was considered open by the defendant, assuming that the testimony of the defendant was true, was the time within which the boilers were to be delivered. When the court came to submit the question to the jury, it submitted the question whether the minds of the parties met up to the time of delivery, so that a contract was actually completed. There was no request by counsel for the defendant to submit any other question to the jury, and the case presents no exception which would justify a reversal, because the question as to whether or not the minds of the parties met as to the time of payment was not submitted to the jury. The defendant moved to dismiss the complaint, which motion was denied. He then asked to go to the jury, which request the court granted without restriction at that time, and then the court charged the jury that they must find that the minds of the parties met as to the terms of delivery before they could find a verdict for the plaintiff. The defendant made no request to submit to the jury the proposition that, if there had not been an agreement as to the time of payment, there was no valid contract. The court had not charged the jury upon that subject, and, if the defendant's counsel had desired to have that question submitted to the jury, it was his duty to request such a submission. The jury did affirmatively find that there was an agreement as to the time of delivery, and that the conditions imposed by the plaintiff in its acceptance of the defendant's proposal were accepted by the defendant. The mere statement of the court in denying a motion for a direction of a verdict for the defendant, or for a nonsuit, as to the ruling that he should make in his charge, is not reversible error, when the charge as finally presented to the jury leaves to their determination the real question in the case, and when no request to charge is made to present any other question to the jury.

Upon the whole case, I think the substantial question was fairly submitted to the jury by a charge which was unexceptionable, and that the finding of the jury that there was a valid contract between the parties was sustained by the evidence. I think the judgment should be affirmed, with costs.

PATTERSON and McLAUGHLIN, JJ., concur.

HATCH, J. (dissenting). I find myself quite unable to concur in the opinion of Mr. Justice INGRAHAM in this case, either as to the conclusions reached or the views expressed, and am impelled to express my reasons therefor. The facts are very fully stated in the prevailing opinion, and I need not, therefore, discuss at length or in detail the preliminary steps in the negotiations which it is claimed resulted, as matter of law, in a contract for the alleged breach of which this action is brought. I think it perfectly apparent that it cannot be successfully maintained that the proposal from the defendant of May 1st, containing specifications for the work, the letter from defendant of May 29th following, by which the proposed contract price was reduced from $5,690 to $5,500, and the order or acceptance of the defendant's said proposal, made

by the plaintiff in writing on the latter date, constituted a meeting of the minds of the parties so as to consummate a contract between them. It will be seen—First, that the proposal and specifications contain no time of delivery, while the order or acceptance requires delivery and completion within 60 days; second, it is an acceptance upon condition, viz. "as per amended proposition of even date"; third, the "amended proposition" referred to was a written proposition from the plaintiff, dated May 29th, the same day as the order, and containing matters of substance not in any of the previous writings, and substantial changes as to other matters. It required the boilers to be set "as per drawings and specifications, and subject to architect's approval,"—a condition not suggested in any previous writing. It changed wholly the terms of payment as contained in the proposal from the defendant in its first communication of May 1st, and finally provided that the boilers "be delivered, erected, and inclosed in mason, work in 60 days from date of order or acceptance." Manifestly, it requires that this almost wholly new proposition should be in some form accepted and acceded to by the defendant in order that it may be held to bind them as a contract. What significance shall be attached to the last words of the amended proposition,—"in 60 days from the date of order or acceptance"? They can mean but one thing, that if the defendant accepts the new conditions it is to complete the work in 60 days from the date of its acceptance. But, if no such words were in the instrument, it does not need argument to show that acceptance of the conditions by the defendant would have to be made in some manner to bind it, and such acceptance and acquiescence would have to be proved by the plaintiff in order to establish its cause of action. This proposition presents the bone of contention in the case.

From this time there is no written instrument in evidence by which the defendant accepts these new conditions in terms. Indeed, it claims it never did accept them, and that, therefore, the minds of the parties never met in a consummated agreement. The prevailing opinion seems to hold that the letter from the defendant's agent dated July 6th, which is fully set out in the opinion, is so inconsistent with the claim that no contract was made—that it shows so conclusively that no other question was open between the parties than that of time of delivery—that, taken in connection with the oral testimony, a finding of the jury that any objection was taken to the terms of payment would have been clearly against the weight of evidence. I utterly fail to see the force of this reasoning. As I view it, such reasoning ignores the true situation, and shifts the burden of proof unjustly. The plaintiff is here claiming for a breach of an express contract, and the onus is upon it to show that a contract exists, to do which it is necessary for it to show that the conditions imposed by it were accepted by the defendant, not upon the defendant to show that they were rejected. It cannot be said, and is not claimed in the prevailing opinion, that this letter alone is sufficient to show that the terms were accepted. Whatever else may be said of it, it must be conceded that it makes

clear that the time of delivery was in dispute. May we indulge the violent presumption—in spite of the direct and irreconcilable conflict in the oral testimony regarding the matter—that, because no other question than time of delivery is urged in the letter, the other terms and conditions had been accepted, and thus dispense with proof of such fact? Unless we may, I can see no way to reach the result arrived at by the trial court and in the opinion delivered here. It seems clear that plaintiff's counsel labored under the conviction that he must show that the new terms and conditions imposed by the defendant had been accepted, and he endeavored to do so by oral testimony. He called the president of the plaintiff, who testified that the new terms and conditions were talked over and agreed upon between him and the agent of the defendant on the 29th day of May, before the so-called order and letter containing amended propositions were written; that the conversation was in the presence of one O'Keefe, and that the letter containing the amended proposition was written in the presence of Thayer, the agent of the defendant. Thayer testified that these two writings were handed to him at the same time; that when he read the letter of acceptance he took some exceptions to the terms of payment, saying that they were extraordinary terms, and he should have to take it up with his principals before definitely accepting them. Then, in regard to the delivery of the boilers 60 days from date, he said that there might be some delay over that, as that was an extraordinarily quick delivery. O'Keefe, called as a witness for the plaintiff, supported the president, and also testified that the terms of payment contained in the amended proposition were proposed by Thayer himself, and consented to by the president, and were written in the blank either from memorandum furnished by Thayer or from a statement made by him; that Thayer never brought up the question of time of delivery until about a month after the contract was completed. The president, being recalled, testified that Thayer did not tell him that there might be some exception to the terms of payment, nor anything about delay in delivery; that there was no talk about that on that day; and that Thayer did present a memorandum of the terms of payment, which were those written by him in the letter. Thayer, again called to the stand, testified that he did not present a memorandum of terms other than those written in the original proposal, which plaintiff then had.

How, in the face of this conflict of evidence, it can justly be said, as matter of law, that the minds of these parties met on the 29th day of May in a consummated contract, I confess myself unable to comprehend. It is asserted that the defendant did not ask to go to the jury upon any question except the one finally submitted by the court, viz. whether the minds of the parties met upon the time of delivery so that a contract was actually completed, and that, as to this proposition, counsel withdrew his exception to the charge. It is contended that the defendant made no request to submit to the jury the proposition that, if there had been no agreement as to the time of payment, there was no valid contract. To

this statement I am also unable to agree. As I read the record, the counsel insisted upon his right to have all the questions submitted to the jury, and waived nothing, except that the court having submitted the one question of time of delivery to the jury, and having finally instructed upon that point to the satisfaction of counsel, he withdrew an exception he had taken to the charge in that respect.

It appears that, having denied a motion to dismiss the complaint, the court said: "The specifications were modified by the written letters on both sides, which finally [When?] crystallized the contract as to the terms of payment. I cannot let you go to the jury on that issue at all. The letters themselves show that you could not deliver the goods on time, and the only question is whether the time of delivery was of the essence of the contract." Counsel for defendant said, "I take an exception to your honor's ruling, and ask to go to the jury;" to which the court replied, "Certainly." The court then said: "Counsel is not allowed to sum up on the point as to whether there was a contract or not. I shall charge the jury that there was a contract. That is a false issue." To this ruling counsel for defendant duly excepted. The court then proceeded with its charge, in which it did instruct the jury that "the only dispute in the case, and which I leave to you, is whether or not they did agree to do that within sixty days. * * * I charge you that there was a contract made between these parties." Counsel for defendant duly excepted to the charge that a contract was made, and that the minds of the parties met with regard to the agreement of payment and with regard to the time of delivery. After discussion between counsel and court regarding the meaning of the exception, counsel withdrew the portion of the exception with regard to the question of delivery. What more he could have done to indicate his wish to go to the jury upon the whole question of the consummation of the contract, or how the court could have more clearly decided, as matter of law, that the minds of the parties did meet in the consummation of a contract, I am unable to see. A perusal of the charge and the statements of court to counsel clearly shows that, in the view entertained by the court, the question of delivery was not an open one, so far as the meeting of the minds of the parties in a contract was concerned, but his query was, was the question of time of the essence of the contract, so that a failure to deliver within the time constituted an actionable breach of the agreement? It seems to me that the whole question was one of fact, requiring its submission to the jury, and that the refusal so to do was error.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

LAUGHLIN, J., concurs.